UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LI ET AL. | CIVIL ACTION |
| VERSUS | NO. 23-1117 |
| GEORGES MEDIA GROUP LLC | SECTION "L" (2) |

## ORDER AND REASONS

Pending before the Court is a Motion to Compel Arbitration by Defendant Georges Media Group, LLC ("Georges Media"), R. Doc. 37. Plaintiff Whitney Richard opposes the motion, R. Doc. 38, and Georges Media filed a reply, R. Doc. 39. Considering the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This case arises from alleged disclosures of Plaintiffs' personally identifiable information ("PII") by Georges Media. R. Doc. 3 at 1. Georges Media is a media publisher that has owned nola.com and theadvocate.com (the "websites") since 2019. *Id.*; R. Doc. 37-1 at 2. On these websites, users can access prerecorded videos and written articles featured. Plaintiffs allege that they are subscribers to nola.com, and that when they watched videos on nola.com, Georges Media shared Plaintiffs' PII with Meta (previously Facebook) without notifying Plaintiffs. *Id.* While this litigation originally started with two named plaintiffs, Li and Richard, Li was not listed as a named party in the proceedings in the First Amended Complaint. R. Doc. 20. For the purposes of this order, this background section will focus on the facts related to the instant motion—whether the parties are bound by an arbitration agreement. For an overview of the facts that Richard alleges in her amended complaint, see R. Doc. 29.

Richard alleges that she first subscribed to nola.com in 2013—before Georges Media

owned the website—and that the terms and conditions listed then did not contain an arbitration agreement. R. Doc. 20; R. Doc. 38-1 at 3-4. Separately, Georges Media states that Richard subscribed to the advocate.com from 2017 to 2018. R. Doc. 37-1 at 1. Richard maintains that the terms and conditions during that subscription did not contain an agreement to arbitrate. *Id.*

In December 2022, the parties agree that Richard became a subscriber to nola.com again. *Id.* at 1-2; R. Doc. 38 at 4. One month later, Georges Media modified its terms and conditions to include an arbitration clause among other changes. R. Doc. 37-1 at 2; R. Doc. 38 at 4. Beginning January 27, 2023, Georges Media avers that subscribers, like Richard, would have seen a pop-up banner upon visiting the website summarizing changes made to the website's terms and conditions:

> This website stores data such as cookies to enable essential website functionality, marketing, personalization and analytics. By remaining on this website you indicate your consent. See updated terms and conditions.

R. Doc. 37-5.

While most of the banner text is black, "See updated terms and conditions" is in blue font and hyperlinked. When clicking the blue text, users are directed to nola.com's "Terms of Use." There, users see all the terms and conditions they are assenting to by continuing to use nola.com, including a statement on arbitration. It reads:

> Arbitration. By using this website, you agree to be bound by this Arbitration Agreement for any dispute or claims of any nature that arise from prior, current or future use of this website.

R. Doc. 37-3.

Georges Media avers that Richard has accessed nola.com over 90 times since January 27, 2023. R. Doc. 37-2 at 3. On August 3, 2023, Richard cancelled her subscription to nola.com. R. Doc. 37-1 at 2. Five days later, she filed her First Amended Complaint against Georges Media. R. Doc. 20. On August 21, 2023, she unsuccessfully tried to reinstate her subscription.

On February 4, 2024, Georges Media filed the instant motion to compel arbitration.

I.     PRESENT MOTION

In the instant motion, Georges Media argues that Richard agreed to arbitrate her claims against it by continuing to utilize nola.com after the terms and conditions were updated to include an arbitration agreement. *Id.* at 1. It further argues that the agreement is enforceable under the Federal Arbitration Act ("FAA") and state contract law. *Id.* at 5-9. Georges Media avers that the arbitration agreement contains a valid delegation clause, and should the Court find that the matter is referrable to arbitration, it prays that the Court dismiss the case accordingly. *Id.* at 9-11.

In opposition, Richard argues that whether a valid agreement to arbitrate exists is for the court to resolve and not an arbitrator. R. Doc. 38. She avers that she never assented to the arbitration agreement because she did not have "reasonable notice" of the addition of the arbitration clause to nola.com's terms and conditions. Thus, she requests that the motion be denied.

In reply, Georges Media argues that Richard was put on reasonable notice of the arbitration agreement when it pushed the pop-up banner alerting subscribers of the changes to nola.com's terms and conditions. R. Doc. 39. Therefore, the matter should be submitted to arbitration.

II.    APPLICABLE LAW

A. FAA

Section 2 of the Federal Arbitration Act provides, in relevant part, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . .shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. There is a strong presumption in favor of arbitration for arbitrable disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Bhatia v. Johnson*, 818 F.2d 418, 421 (5th Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S.

614 (1985)). When considering a motion to compel arbitration under the FAA, the court's inquiry consists of three steps. *See Mitsubishi Motors Corp.*, 473 U.S. at 626; *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Gaskamp*, 280 F.3d at 1073. Next, it will examine "whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the first two steps are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (internal citation omitted).

### B. Louisiana laws on Contract Formation

To determine whether there is an agreement to arbitrate, the Court looks to underlying state law. The applicable state law in this instance is the law of Louisiana. Under Louisiana law, a contract is "an agreement by two or more people whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Louisiana law further provides that "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Coleman v. Jim Walter Homes, Inc.*, No. 08–1221 (La. 3/17/09), 6 So. 3d 179, 183; *Sherman v. RK Restaurants Holdings, Inc.*, No. 13-6054, 2014 WL 4540023 *1, *5 (E.D. La. Sept. 11, 2014). Moreover, "offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927. "The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011).

### III. DISCUSSION

The crux of the parties' arguments concern whether there is a valid agreement to arbitrate. Here, the Court finds that Richard accepted the terms of the arbitration agreement through her continued use of nola.com. *See* R. Doc. 39 ("Nor does [Richard] dispute that, despite this notice, she then proceeded to continue using Georges Media's website, as recently as January 2024."). Under Louisiana law, acceptance need not be made in writing, and instead can be demonstrated through action or inaction. La. Civ. Code art. 1927. On January 27, 2023, Georges Media apprised subscribers through a pop-up notification that its terms and conditions had changed, and that "[b]y remaining on this website [subscribers] indicated [their] consent." R. Doc. 37 at 2. The updated terms and conditions contained a provision notifying subscribers that their use of the website would indicate their consent to arbitrate pursuant to an Arbitration Agreement, which was hyperlinked. *Id.* at 3. Further, in his sworn declaration, Vice-President of Consumer Revenue of Capital City Press[1] Kyle Whitefield stated that Ms. Richard has accessed Georges Media's websites over 90 times since January 27, 2023.

Similar cases have held that arbitration agreements can be incorporated into a contract by reference. In *Action Industries, Inc. v. Innophos, Inc.*, the United States District Court for the Middle District of Louisiana held that a buyer presumptively agreed to an arbitration agreement when they signed a purchase order that referenced terms and conditions on the seller's website. No. CV 19-00509-BAJ-RLB, 2020 WL 2928438, at *2 (M.D. La. June 3, 2020). The reference was contained in a single sentence at the bottom of the purchase order, and stated that the order was contingent upon agreement to seller's online terms and conditions. *Id.* The court reasoned that by filling out the purchase order, the buyer was on notice that it would have to comply with the

---

[1] Georges Media Group is the parent company of Capital City Press LLC. R. Doc. 37-2 at 1. Capital City Press operates websites owned by Georges Media. *Id.*

seller's terms, which included arbitration. *Id.*

Like in *Action Industries, Inc.*, here the arbitration agreement was referenced through the "updated terms and conditions" pop-up notification. *Id.* The Court finds that the pop-up banner was analogous to the one-sentence reference to online terms and conditions on the purchase order in *Action Industries, Inc*. *Id.* Moreover, as Georges Media properly notes, it is no defense that Richard did not actually read the updated terms and conditions in the pop-up banner. R. Doc. 39 at 4. Instead, the relevant inquiry is whether Richard had "reasonable notice of the terms at issue and whether [she] manifested assent to those terms." *One Beacon Ins. Co.*, 648 F.3d at 269. Here, the Court holds that Richard did have reasonable notice of the Arbitration Agreement, which was incorporated by reference in the updated terms of agreement, and she agreed to the Arbitration Agreement by continuing to use the website after January 27, 2023. Thus, there was a valid agreement to arbitrate between the parties. *Gaskamp*, 280 F.3d at 1073.

The next two elements of the FAA analysis are quickly disposed of. All of Richard's claims arise out of her use of the websites, which is expressly governed by the arbitration agreement. Lastly, the Court finds no federal statute or policy would render these claims nonarbitrable. *Jones v.* 583 F.3d at 234. Accordingly, the Court finds that the parties must arbitrate Richard's claims before pursuing any further litigation.

## IV. CONCLUSION

For the foregoing reasons, Defendant Georges Media Group's Motion to Compel Arbitration is **GRANTED**. Thus, this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** until arbitration is completed.

New Orleans, Louisiana, this 7th day of March, 2024.

_____
United States District Judge